IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DECTER RYAN TINGSTROM,           )
                                 )
        Plaintiff,                )
                                 )
    vs.                          )   Civil Action No. 15-130-J
                                 )
                                 )
COMMISSIONER OF SOCIAL SECURITY, )
                                 )
        Defendant.                )

O R D E R

AND NOW, this 29th day of September, 2016, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 12), filed in the above-captioned matter on December 11, 2015,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 10), filed in the above-captioned matter on November 13, 2015,

IT IS HEREBY ORDERED that said Motion is GRANTED. Accordingly, this matter is hereby remanded to the Commissioner of Social Security ("Commissioner") for further evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

**I.    Background**

On August 22, 2013, Decter Ryan Tingstrom protectively filed a claim for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq. Specifically, Plaintiff claimed that he became disabled on March 24, 2000, due to a mood

1

disorder, psychosis, a learning disorder, cluster "B" personality traits, and a history of brain injury (at age 6). (R. 162).

After being denied initially on January 7, 2014, Plaintiff sought, and obtained, a hearing on June 30, 2014, before an Administrative Law Judge ("ALJ"). (R. 32-60). In a decision dated September 11, 2014, the ALJ denied Plaintiff's request for benefits. (R. 16-31). The Appeals Council declined to review the ALJ's decision on March 4, 2015. (R. 1-6). Plaintiff filed a timely appeal with this Court, and the parties have filed cross-motions for summary judgment.

## II. **Standard of Review**

Judicial review of a social security case is based upon the pleadings and the transcript of the record. See 42 U.S.C. § 405(g). The scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. See Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001) (noting that "'[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive'" (quoting 42 U.S.C. § 405(g))); Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999) (stating that the court has plenary review of all legal issues, and reviews the administrative law judge's findings of fact to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate'" to support a conclusion. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)). However, a "'single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Kent v. Schweiker, 710 F.2d 110,

2

114 (3d Cir. 1983)). "'Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion.'" Id.

A disability is established when the claimant can demonstrate "some 'medically determinable basis for an impairment that prevents him [or her] from engaging in any substantial gainful activity for a statutory twelve-month period.'" Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001) (quoting Plummer, 186 F.3d at 427 (internal citation omitted)). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'" Id. at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability as defined by the Act. See 20 C.F.R. § 416.920. In Step One, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. See 20 C.F.R. § 416.920(b). If so, the disability claim will be denied. See Bowen v. Yuckert, 482 U.S. 137, 140 (1987). If not, the second step of the process is to determine whether the claimant is suffering from a severe impairment. See 20 C.F.R. § 416.920(c). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.921(a). If the claimant fails to show that his or her impairments are "severe," he or she is ineligible for disability benefits. If the claimant does have a severe impairment, however, the Commissioner must proceed to Step Three and determine

whether the claimant's impairment meets or equals the criteria for a listed impairment. See 20 C.F.R. § 416.920(d). If a claimant meets a listing, a finding of disability is automatically directed. If the claimant does not meet a listing, the analysis proceeds to Steps Four and Five.

Step Four requires the ALJ to consider whether the claimant retains the residual functional capacity ("RFC") to perform his or her past relevant work, see 20 C.F.R. § 416.920(e), and the claimant bears the burden of demonstrating an inability to return to this past relevant work, see Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume his or her former occupation, the evaluation then moves to the fifth and final step.

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability. See 20 C.F.R. § 416.920(g). In making this determination, the ALJ should consider the claimant's RFC, age, education, and past work experience. See id. The ALJ must further analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. See 20 C.F.R. § 416.923.

### III. The ALJ's Decision

In the present case, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since August 22, 2013. (R. 21). The ALJ also found that Plaintiff met the second requirement of the process insofar as he had certain severe impairments, particularly, specific learning disability, cognitive disorder, mood disorder, psychosis, attention-deficit hyperactivity disorder, history of marijuana abuse in partial remission, cluster B personality traits, schizoaffective disorder, insomnia, and migraine headaches. (R. 21). The ALJ concluded

that Plaintiff's impairments did not meet any of the listings that would satisfy Step Three. (R. 21-24).

The ALJ next found that Plaintiff retained the RFC to perform a full range of work at all exertional levels but with certain non-exertional limitations, including that he is limited to no exposure to pulmonary irritants, and no exposure to hazardous conditions including unprotected heights and dangerous machinery; is limited to unskilled work consisting of simple, routine tasks involving no more than simple, short instructions and simple, work-related decisions with few workplace changes; is limited to no work at production rate, fast pace, or quota standards; and is limited to occasional interaction with the public, co-workers, and supervisors. (R. 24-27). At Step Four, the ALJ found that Plaintiff is unable to perform any past relevant work, so he moved on to Step Five. (R. 27). The ALJ then used a vocational expert ("VE") to determine whether or not a significant number of jobs existed in the national economy that Plaintiff could perform. The VE testified that, based on Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy, such as box bender, hand packer, night stock clerk, and equipment cleaner. (R. 27-28, 55-56). Accordingly, the ALJ found that Plaintiff was not disabled. (R. 28).

## IV. Legal Analysis

Plaintiff argues, in essence, that her RFC is not supported by substantial evidence because the ALJ did not properly consider the opinion of consultative examining psychologist Charles Kennedy, Ph.D. Specifically, Plaintiff contends that the ALJ did not provide an adequate explanation for his decision to give "no weight" to Dr. Kennedy's opinion that Plaintiff has "marked" limitations social functioning, particularly in his ability to interact appropriately with supervisors, co-workers and the public. (R. 26). The Court finds that, because the ALJ

failed to address properly these particular social limitations, the Court cannot find that the ALJ's formulation of Plaintiff's RFC is supported by substantial evidence. Accordingly, the Court will remand the case for further consideration.

RFC is defined as "'that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" Fargnoli, 247 F.3d at 40 (quoting Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000)); see also 20 C.F.R. § 416.945(a). Not only must an ALJ consider all relevant evidence in determining an individual's RFC, the RFC finding "must 'be accompanied by a clear and satisfactory explication of the basis on which it rests.'" Fargnoli, 247 F.3d at 41 (quoting Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)). "'[A]n examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision.'" Id. (quoting Cotter, 642 F.2d at 705); see also SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).").

In his discussion of the opinion expressed by Dr. Kennedy in December, 2013, the ALJ noted that Dr. Kennedy had indicated, among other things, that Plaintiff had "'marked' limitations in his ability to understand, remember, and carry out complex instructions, make judgments in complex work-related decisions, interact appropriately with the public, supervisors, and co-workers, and respond appropriately to usual work situations and to changes in a routine work setting." (R. 26, 358-59). Although the ALJ admittedly gave "partial" weight to the limitation on Plaintiff's ability to perform complex tasks, he gave "no weight" to Dr. Kennedy's

6

finding of "marked" limitations in Plaintiff's ability to interact with the public, supervisors, and co-workers because, as he explained, "they are entirely inconsistent with the claimant's ability to perform personal care, go outside daily, walk by himself, go out alone, and go shopping in stores, and [certain] high GAF scores." (R. 26).

The Court notes that, in explaining why he gave no weight to Dr. Kennedy's findings of marked limitations, most of the factors listed by the ALJ are not actually related to the social functioning limitations he is rejecting. In fact, as Plaintiff points out in his brief, three of the factors that the ALJ listed—performing personal care, going out alone, and walking by himself—are solitary activities by definition, and two of the factors—going outside daily and Plaintiff's GAF scores—are not necessarily inconsistent with a marked limitation in social functioning. (R. 26). In fact, the only factor the ALJ listed that is obviously related to social functioning is going shopping in stores. (R. 26). Nevertheless, while Plaintiff did state in his function report that he shops for food weekly for three hours, it is not clear to the Court that the existence of this factor alone sufficiently justifies the ALJ's complete rejection of Dr. Kennedy's finding of marked limitations. (R. 177). Since the ALJ did not provide further explanation as to the evidence he relied upon in the record in reaching his conclusions, nor is it clear how the factors he listed are relevant to Plaintiff's ability to perform the social functions at issue, the Court finds that the ALJ's decision lacked adequate discussion and clarity to explain his findings. Thus, the Court finds that the ALJ's analysis is simply insufficient to permit meaningful review.

Accordingly, in this case, without providing an explanation of the basis upon which he rejected the social limitations at issue in Dr. Kennedy's opinion, it is not clear to the Court whether the ALJ's decision in this regard was based on substantial evidence. While the ALJ was

7

certainly not required to simply adopt all of the findings of Dr. Kennedy, he was required to explain adequately his basis for rejecting them if he chose to do so. Thus, the ALJ's comments concerning the marked social limitations contained in Dr. Kennedy's opinion do not allow the Court to determine the basis for his decision to give "no weight" to that portion of the opinion. Remand is therefore required to allow for further discussion regarding the rationale for rejecting the marked limitations as to Plaintiff's ability to interact with the public, supervisors, and co-workers found by Dr. Kennedy.

Additionally, the ALJ should, of course, ensure that proper weight be accorded to the various opinions and medical evidence presented in the record, and he should verify that his conclusions concerning Plaintiff's RFC are adequately explained, in order to eliminate the need for any future remand. Indeed, the Court expresses no opinion as to whether the ALJ's RFC determination regarding Plaintiff's impairments could, in fact, be supported by the record. It is, instead, the need for further explanation that mandates the remand on this issue.

## V. Conclusion

In short, the record simply does not permit the Court to determine whether the ALJ's determination of Plaintiff's RFC is supported by substantial evidence, and, accordingly, the Court finds that substantial evidence does not support the ALJ's decision in this case. The Court hereby remands this case to the ALJ for reconsideration consistent with this Order.

s/ Alan N. Bloch
United States District Judge

ecf: Counsel of record